**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIK SHAKUR,<br><br>                Plaintiff,<br><br>     v.<br><br>NEW JERSEY STATE PRISON MEDICAL DEPARTMENT, et al.,<br><br>                Defendants. | Case No. 2:19-cv-14994 (BRM) (JBC)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion for Summary Judgment filed by Defendants Robin Miller, M.D. ("Miller") and Edith Senyumba, M.D. ("Senyumba") (collectively, "Moving Defendants") seeking to dismiss Malik Shakur's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 56. (ECF No. 71.) Plaintiff filed an Opposition on April 16, 2024. (ECF No. 78.) Defendants filed a Reply on May 20, 2024. (ECF No. 82.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND**

The following facts are drawn from Defendants' statement of material facts and accompanying exhibits (ECF No. 71), which are deemed admitted for the purposes of Defendants' Motion in light of Plaintiff's failure to dispute their statement of material facts.[1] *See* Fed. R. Civ.

---

[1] Although Plaintiff filed an Opposition to Defendants' Motion and in that Opposition indicates that he included a Response to Defendants' statement of material facts (ECF No. 78 at 8), Plaintiff

P. 56(e)(2); Local Civil Rule 56.1. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Plaintiff as the non-moving party, with all reasonable inferences drawn in his favor.

In early May 2019, Plaintiff was doing pull-ups when he heard a "pop" in his shoulder. (Defendants' Stat. Of Mat. Facts Not in Dispute ("DSOMF") (ECF No. 71-8) ¶ 2.) Plaintiff subsequently complained of neck pain, weakness on the right side of his body, and gait dysfunction. (*Id.*)

On May 13, 2019, following Plaintiff's request for a sick call, Kenneth Bass, R.N. examined Plaintiff and noted Plaintiff denied having sustained "any injury." (*Id.* ¶ 4.) Nurse Bass noted full range of movement with some weakness in Plaintiff's right-hand grip, and prescribed ibuprofen. (*Id.*) Two days later, on May 15, 2019, Defendant Senyumba examined Plaintiff, ordered a shoulder and cervical X-Ray and bloodwork, and prescribed an increased dosage of ibuprofen. (*Id.* ¶ 5.) Defendant Senyumba also made a note to "consider EEG/neurologist assessment" at Plaintiff's next visit. (*Id.*)

In March 2012, Plaintiff was diagnosed with a seizure disorder, which resulted in Plaintiff being prescribed the anti-seizure medication Dilantin. (*Id.* ¶ 6.) On May 24, 2019, Defendant Senyumba saw Plaintiff for a neurology visit in the chronic care clinic due to low Dilantin levels in Plaintiff's bloodwork. (*Id.*) Defendant Senyumba prescribed Plaintiff an increased dose of Dilantin, added a prescription for aspirin, noted that Plaintiff's ordered X-Rays were still pending, and advised Plaintiff to perform stretches and to avoid rigorous exercise. (*Id.*)

---

failed to include a "responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." L.Civ.R. 56.1.

On June 3, 2019, Plaintiff had a cervical spine X-Ray, which showed degenerative changes in Plaintiff's cervical spine, including degenerative narrowing at C5/6 and C6/7, with osteophyte formation consistent with osteoarthritis, and a right shoulder X-Ray, which showed no significant degenerative changes or bone abnormalities. (*Id.* ¶ 7–8.) On June 5, 2019, Defendant Miller examined Plaintiff for complaints of neck pain and numbness in his hands with right-side weakness. (*Id.* ¶ 9.) Defendant Miller noted Plaintiff was dragging his right foot and could not lift it up far. (ECF No. 73 at 40.) Defendant Miller ordered an MRI of Plaintiff's head and spine, a wheelchair for distance, and Naproxen. (ECF No. 71-8 ¶ 9.) On June 21, 2019, Defendant Miller examined Plaintiff for right sided hemiparesis and neck pain, noting Plaintiff was now having spasms and decreased range of motion on his right side, with some weakness on his left side. (*Id.* ¶ 11.) Defendant Miller prescribed Robaxin for Plaintiff's spasms and noted that the was concerned of a "possible cva (stroke)" and ordered an MRI of Plaintiff's brain "asap." (*Id.*)

The results of Plaintiff's June 27, 2019 head X-Ray were negative. (*Id.* ¶ 12.) On July 11, 2019, Plaintiff had a cervical and brain MRI. (*Id.* ¶ 14.) The brain MRI reported no abnormality. (*Id.*) The cervical MRI reported a herniation at C3/4, a disc bulge at C5/6, and a multilevel degenerative disc disease. (*Id.*) On July 15, 2019, Joan Mitchell, R.N. examined Plaintiff and noted "minimal strength" in Plaintiff's right hand, and that Plaintiff's left hand and leg appeared "normal." (*Id.* ¶ 15.) Defendant Miller instructed Nurse Mitchell to send Plaintiff to Virtua Lourdes Hospital. (*Id.*)

On the same day, Defendant Miller conferred with Dr. Strenger at Lourdes regarding Plaintiff's MRI results. (*Id*. ¶ 16.) Dr. Strenger gave Plaintiff a shot of Solumedrol and admitted him to Lourdes as a direct admission. (*Id.*) On July 15, 2019, Plaintiff informed Dr. Strenger that he heard a "pop" while doing a pull-up "approximately 3 months ago," with associated neck pain,

3

progressive weakness on his right side, and gait dysfunction. (*Id.* ¶ 17.) Plaintiff later testified he began to feel pain in his right side "right after" this incident. (*Id.*)

On July 17, 2019, Plaintiff underwent a cervical discectomy at Lourdes. (*Id.* ¶ 18.) On the same day, Plaintiff was transferred back to the New Jersey State Prison's infirmary, where he was given a cervical collar and additional medications. (*Id.*) Plaintiff testified that after the July 17, 2019 surgery, his shoulder, neck, and hands felt better than they had prior to the surgery. (*Id.* ¶ 19.)

On June 10, 2019, Plaintiff signed and dated his Complaint, which was received by the Court on July 10, 2019. (ECF No. 1.) The Complaint asserts Eighth Amendment deliberate indifference to Plaintiff's medical needs claims against Defendants Miller and Senyumba, alleging they misdiagnosed Plaintiff's "stroke." (*See id.*) On August 31, 2021, the Court granted Defendants' Motions to Dismiss and dismissed any construed medical malpractice tort claims. (*See* ECF No. 33.) Plaintiff's Eighth Amendment deliberate indifference claims against Defendants are the only remaining claims in this matter.

On December 15, 2023, Defendants filed the Motion for Summary Judgment. (ECF No. 71.) Defendants argue Plaintiff's claims should be dismissed because he has failed to provide evidence to show they acted with deliberate indifference to a serious medical need. (*See id.*) Plaintiff filed an Opposition to the Motion. (ECF No. 78.) Defendants filed a Reply. (ECF No. 82.)

## II.   LEGAL STANDARD

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*,

4

477 U.S. 242, 247 (1986). The mere existence of an alleged disputed fact is not enough. *Id*. Rather, the opposing party must prove that there is a genuine issue of a material fact. *Id.* An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *Id.*

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To meet its burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

Pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, where, as here, the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, this Court is free to treat the moving party's statement of material facts as undisputed and therefore admitted for the purposes of resolving the motion for summary judgment. *See, e.g.*, *Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2–3 (D.N.J. Feb. 14, 2017). Even where the defendants' statement of material facts is deemed

5

admitted and unopposed, however, a district court is still required to "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [the moving party is] entitled to judgment as a matter of law" in order to grant summary judgment. *Id.* at 2 (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

### III. DECISION

In his Complaint, Plaintiff alleges Defendants misdiagnosed Plaintiff's stroke. (ECF No. 1.) Plaintiff claims he was no longer able to use his right side due to paralysis from a stroke. (*Id.* at 6.) The Court construes Plaintiff's Complaint as alleging his symptoms worsened due to Defendants' deliberate indifference to his medical needs. Defendants move for summary judgment on Plaintiff's § 1983 Eighth Amendment deliberate indifference claims. (ECF No. 71.) Defendants argue the undisputed facts show that neither Defendant ever refused to treat Plaintiff, nor did Defendants delay or prevent Plaintiff from receiving any treatment. (*See* ECF No. 71-1 at 7–12.)

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishment" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). To set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for

6

a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

As explained above, Plaintiff submitted a request for a sick call on May 13, 2019, and was seen the same day by the medical staff for complaints of neck and shoulder pain.[2] (ECF No. 71-8 ¶¶ 3–4.) Plaintiff denied sustaining "any injury" at this initial examination. (*Id.* ¶ 4.) Plaintiff was prescribed ibuprofen. (*Id.*) On May 15, 2019, and May 24, 2019, Defendant Senyumba examined Plaintiff. (*Id.* ¶¶ 5–6.) On May 15, 2019, Defendant Senyumba ordered a shoulder and cervical X-Ray, bloodwork, and prescribed an increased dosage of ibuprofen. (*Id.* ¶ 5.) On May 24, 2019, Defendant Senyumba saw Plaintiff due to having low levels of Dilantin, a medicine which Plaintiff took for a seizure disorder. (*Id.* ¶ 6.) Defendant Senyumba increased Plaintiff's Dilantin dosage and added a prescription for aspirin. (*Id.*) Defendant Senyumba also advised Plaintiff to perform stretches and to avoid exercise. (*Id.*)

Plaintiff received the ordered X-Rays on June 3, 2019, which revealed degenerative changes in his cervical spine. (*Id.* ¶ 8.) Two days later, on June 5, 2019, Defendant Miller examined Plaintiff and noted that Plaintiff was dragging his right foot and complained of neck pain, and right sided weakness and numbness. (*Id.* ¶ 9, ECF No. 73 at 40.) Based on Plaintiff's examination, Defendant Miller ordered an MRI of Plaintiff's head and spine, a wheelchair for distance, and Naproxen. (*Id.* ¶ 9.) Defendant Miller again examined Plaintiff on June 21, 2019. (*Id.* ¶ 11.) Defendant Miller prescribed Robaxin for Plaintiff's spasms and noted concerns about a "possible cva (stroke)" and again ordered an MRI of Plaintiff's brain "asap." (*Id.*)

Plaintiff's July 11, 2019 brain MRI was normal, while his cervical MRI showed a herniation at C3/4, a disc bulge at C5/6, and a multilevel degenerative disc disease. (*Id.* ¶ 14.) On

---

[2] The Court notes Plaintiff's Opposition provides dates relevant to Plaintiff's medical care that are slightly different from those submitted by Defendants. (*Compare* ECF No. 71-1 and ECF No. 78.) However, Defendants cite to Plaintiff's attached medical records in support of the dates used in Defendant Motion and Statement of Undisputed Material Facts. (*See* ECF Nos. 71-1, 71-8, and 73.) Therefore, the Court uses the dates submitted by Defendants.

July 15, 2019, Defendant Miller had Plaintiff sent to Virtua Lourdes Hospital. (*Id.* ¶ 15.) Plaintiff underwent a cervical discectomy on July 17, 2019. (*Id.* ¶ 18.)

In cases such as this one, where "a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). It is a "well-established rule that mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (holding that "mere disagreement as to the proper medical treatment" is insufficient to establish an Eighth Amendment violation). Prison medical authorities are "afford[ed] considerable latitude" in the diagnosis and treatment of the medical problems of inmate patients. *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

The facts regarding the treatment Plaintiff received under the care of Defendants Senyumba and Miller, as to which the evidence creates no genuine material issue, undermines Plaintiff's deliberate indifference claim against Defendants. Even assuming, *arguendo*, Plaintiff can show a serious medical need, the record does not show that Defendants were deliberately indifferent to that need. As the undisputed evidence of record demonstrates, Plaintiff received consistent medical attention from Defendants during the relevant time period, including physical examinations, medications, diagnostic testing, and a transfer to the hospital which resulted in spinal surgery. Although Plaintiff alleges Defendants "denied [him] access [to] the proper care to treat the stroke like symptoms Plaintiff was experiencing," Plaintiff testified during his deposition that he has never been diagnosed as having suffered a stroke. (ECF No. 78 at 14; ECF No. 71-6 at 53:18–

9

54:7.) Rather, the medical records show, and Defendants submit, that Plaintiff was diagnosed with herniation at C3/4, a disc bulge at C5/6, and a multilevel degenerative disc disease and received spinal surgery as a result. Additionally, Defendant Miller ordered an MRI of Plaintiff's brain based on Plaintiff's neurological symptoms, and that results of that MRI were normal. In sum, the records show Plaintiff was receiving consistent treatment throughout the time in question. Plaintiff has failed to present evidence to show that Defendants failed to provide care for a serious medical risk. As such, this evidentiary record does not support a claim of deliberate indifference by Defendants Senyumba and Miller. Therefore, Defendants' motion for summary judgment is granted.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**. (ECF No. 71.) An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE

Dated: July 17, 2024